UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CASE NO.06-60316 <br> ) <br> ) CHAPTER 11 <br> ) |
| THE BELDEN LOCKER COMPANY, | ) JUDGE RUSS KENDIG <br> ) |
| Debtor. | ) **MEMORANDUM OF OPINION ON** <br> ) **OBJECTION TO** <br> **ADMINISTRATIVE EXPENSE** <br> **CLAIM OF RSS ACQUISITION,** <br> **LLC (NOT INTENDED FOR** <br> **PUBLICATION)** |

This matter is before the court on the Objection of The Belden Locker Company ("Belden") to the administrative expense claim of RSS Acquisitions, LLC ("RSS"). RSS filed its claim on September 11, 2006. Belden filed the instant objection on July 12, 2007. RSS filed a brief in reply on August 16, 2007. Belden responded with a brief in support of its objection on September 14, 2007. RSS filed a resply to Belden's response on September 28, 2007.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

The court finds that there are genuine issues of material fact remaining in this case, precluding judgment as a matter of law on any of the parties' claims.

### FACTUAL AND PROCEDURAL BACKGROUND

RSS' administrative expense claim against Belden arises out of the latter's alleged misuse of proprietary information. RSS argues that it produced information on the understanding that it would remain confidential, that Belden breached that agreement, and that the information thus produced a benefit to the estate, warranting administrative expense priority for RSS' claims.

The facts leading up to the alleged breach of confidentiality are not in serious dispute. On March 14, 2006, RSS and Belden entered into an Asset Purchase Agreement (the "APA"), in which RSS agreed to purchase substantially all of Belden's assets subject to an established

bidding procedure. The APA provided that if RSS were outbid at the auction for the purchase of Belden's assets, the former would be entitled to a "Breakup Fee" in the amount of $600,000. In addition, whether or not RSS was the successful bidder, Belden would pay RSS an "Expense Fee" of $120,000 in four installments between February 17 and March 8, 2006. The Expense Fee was paid according to the specified terms. On March 31, 2006, the court entered an order (the "Bidding Procedures Order") approving auction and bidding procedures with respect to the proposed sale of Belden's assets to RSS.

Pursuant to the Bidding Procedures Order, the auction was held on April 26, 2006. Three primary bidders participated: RSS, Buckeye RSS ("Buckeye"), and Excel. Buckeye was the highest bidder. On April 28, 2006, this court entered an order approving the sale, and the sale closed on May 11, 2006. On May 12, 2006, Belden paid RSS the $600,000 Breakup Fee.

While the beginning and end of the auction story are not in serious dispute, however, the middle is, and it is here that genuine issues of material fact arise that cannot be resolved on the pleadings. There are fundamental uncertainties in the facts, as Debtor and Claimant have not stipulated as to the facts.

RSS claims that, in contemplation of the sale, it produced two significant items of confidential information, that Belden agreed to keep these items confidential, that Belden divulged the confidential information to other prospective bidders, and that in so doing it produced a net benefit to the estate. This, in turn, RSS alleges, entitles its claim for breach of the confidentiality agreement to administrative expense priority.

The first item was an agreement between RSS and Belden's union (the "Union"). At some point during the period leading up to the auction, RSS negotiated an agreement (the "Union Agreement") with the Union. While not explicitly stipulated by the parties, it is also not disputed that the agreement did somehow find its way into the hands of Buckeye and Buckeye's parent company, Clarion Capital Partners. Buckeye's winning bid unilaterally incorporated the same terms as the Union Agreement. The material issue remaining is who divulged this information. RSS claims that "the Debtor, through its agents, provided the Union Agreement to agents for Buckeye's parent company, Clarion Capital Partners." (Reply to Debtor's Obj. ¶ 7.) By contrast, Belden asserts that "it is the Debtors' [sic] understanding that the Union gave the bidders the details of the RSS Union agreement." (Obj. to Claim 3.) RSS states that "the Union has confirmed to RSS that it did not provide Clarion with a copy of the basic Union Agreement," (Reply to Debtor's Obj., at ¶ 8) but this cannot be substantiated without further factfinding.

The second item consists of the results of Phase II environmental testing (the "Phase II Test") conducted by an independent environmental testing company on Belden's land, paid for by RSS. The material issue here is not who disclosed the information; Belden concedes that it did in fact provide Buckeye with the results of the Phase II Test. The issue in dispute here regards whether Belden ever agreed to keep this information confidential in the first place. Belden's Objection asserts that "RSS did not request that Belden refrain from disclosing the

2

results of the testing to third parties. Accordingly, when Buckeye asked for information regarding the environmental testing, they were provided with the results of the Phase I and Phase II tests." (3-4.) By contrast, RSS asserts in its Reply to Debtor's Objection that Debtor and RSS did in fact agree that "the environmental data would remain RSS's exclusive property and would not be made available to any other bidder" (¶ 9), and that only after Belden had agreed to this did RSS share the results of the Phase II Test with Belden. Similarly, RSS asserts that, in further discussions between RSS' officers, Belden's officers, and RSS' retained environmental engineers, "[t]he Phase II data was disclosed in these meetings with the understanding that the data remain privileged, covered by a joint defense understanding and, potentially, the attorney work-product doctrine." Id. Furthermore, RSS alleges that Debtor actually requested that RSS permit Debtor to provide other bidders with the Phase II Test results, and that RSS denied that request. Id. at ¶ 10.

## LEGAL ANALYSIS

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. That rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To say that material disputes still exist over the facts in this case is an understatement. Indeed, the factual development has been so lean that even intermediate issues in the case, such as the breadth of the release language in the APA or whether any claim upon which RSS might prevail should be given administrative expense priority, are unable to be determined.

The court's current understanding is that Belden is asserting an affirmative defense of release, waiver, and/or estoppel, based on language contained in the APA that may or may not have been intended to be broad enough to cover the actions of which RSS complains. However, it is unclear whether the textual arguments of release are applicable to the claims without determined or stipulated facts, as the breadth and reach of the release language are disputed.

The uncertainties regarding RSS' argument that its claim should be entitled to administrative expense priority are even more fundamental. Claimant has not set forth specific causes of action. Accordingly, it is impossible to determine which disputed facts are necessary (or not) to determine the success of the claims. Claims for administrative expenses, unlike proofs of claim, are not entitled to a presumption of validity. In re Fullmer, 962 F.2d 1463 (10th Cir. 1992), In re Cardinal Industries, Inc., 151 B.R. 833 (Bkrtcy.S.D.Ohio 1992).

Accordingly, summary judgment on any issue in this case is inappropriate and will be denied by a separate order to be entered contemporaneously with this opinion.

/s/ Russ Kendig
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

The Belden Locker Company
1038 Belden Ave., N.E.
Canton, OH 44705

James Michael Lawniczak
Karen A. Visocan
Laura McBride
Lisa M. Yerrace
Nathan A. Wheatley
1400 KeyBank Center
800 Superior
Cleveland, OH 44114

Dov Frankel
Harry W. Greenfield
Buckley King, LPA
600 Superior Ave E
Suite 1400
Cleveland, OH 44114

Wanda Borges
575 Underhill Blvd.
#110
Syosset, NY 11791

Derrick Rippy ust11
Office of the United States Trustee
H. M. Metzenbaum U.S. Courthouse
201 Superior Avenue
Suite 441
Cleveland, OH 44114